OPINION
{¶ 1} This appeal arises from the Portage County Court of Common Pleas wherein, appellant, Craig M. Kitts ("Kitts"), was charged with one count of murder and one count of domestic violence.
 {¶ 2} Craig and Lori Kitts married in 1998, and were living in Kent, Ohio. The couple had one child together who was two years of age at the time of the incident.
 {¶ 3} On November 4, 2000, the Kent Police Department received a 911 call from Carrie Coleman, a neighbor of the Kitts' reporting that she thought Lori Kitts ("Lori") may have attempted to commit suicide. Coleman told police that Lori was laying in the street, convulsing. Coleman told police that Kitts told her that his wife had taken a few bottles of pills. Kent Police and Fire Departments were dispatched to the scene.
 {¶ 4} The Kent Fire Department found Lori laying face down, partially on the roadway, with a pool of vomit to her left. She was barefoot and had no coat on. Kitts informed officials that he thought his wife had taken some pills and then ran into the roadway and collapsed face first. He told officials that he dropped her when he tried to move her off the road. An EMS team took Lori to Akron City Hospital.
 {¶ 5} At the hospital, a CT scan was performed which revealed three lineal skull fractures, a basal skull fracture, large lumps on either side of her head behind her ears, and a black left eye. She also had scrapes on the tops of her feet, her knees, and the backs of her hands. Lori never regained consciousness and died the following day. An autopsy revealed that her injuries were not caused by a fall but, rather, by blunt force trauma to the head. She was struck six times with a blunt object causing eleven separate skull fractures. It was determined that any one of the six blows could have caused her death. Her death was ruled a homicide.
 {¶ 6} An investigation was already underway. On the night of the incident, Kent Police interviewed Kitts. Kitts explained that his wife had a history of mental instability. He told the police that he and Lori had a fight earlier in the day over cigarettes. He stated Lori clawed at him and broke his guitar by smashing it on the floor. He said he tried to leave and Lori grabbed him by his shirt. He pushed her away and then left through the front door. He said, as he was exiting, Lori grabbed the handle on the inside while he held on to the handle from the outside. Kitts let go of the door and "maybe pushed it a little" causing Lori to hit her forehead on the door and the back of her head on the wall behind her. Kitts said as he left and closed the door he heard the sound of a pry bar and then a hack saw hitting the door behind him.
 {¶ 7} Kitts then said he asked a neighbor to drive him to the Kent Police Station to file a report. The neighbor testified that while he was driving Kitts to the station he noticed a gash above Kitts' nose, his cuticles were cut, and he kept rubbing his right arm. The neighbor dropped him off at the station. However, Kitts left the station without filing any report. He told officers he was going for a walk and that everything would be fine.
 {¶ 8} Kitts said he returned home and Lori was asleep on the couch. Their daughter was taking a nap. Kitts said he laid down for a nap and woke up between 5:00 and 5:30 p.m. when he went into the bathroom and noticed several empty pill bottles in the garbage. He said he woke Lori up and asked her about the pills. Lori told him that she took them all. He said she got up and staggered across the room, tripping over a baby gate. He said she hit her head on the doorframe as she fell over the gate. She then laid back down on the couch.
 {¶ 9} Kitts said he put their daughter in the car and told Lori he was going to take her (Lori) to the hospital. Lori followed him out the front door. When they were on the porch, Lori took off running down the street. He said he chased after her when she collapsed face down on the pavement. He said he tried to move her off the road but dropped her.
 {¶ 10} Kitts was subsequently indicted on one count of murder and one count of domestic violence. After his arrest, Kitts elaborated on his original version of the event. Kitt told authorities that he and Lori had done a lot of wrestling on that day and both had hit their heads several times. He noted that he had hit her on the head with his elbow. He told authorities that when he put their daughter in the car Lori ran out behind and jumped on the back bumper of the car. He said he heard her head hitting the road "making a terrible sound." He tried to drag her off the roadway and when she started vomiting, he called 911. He stated that the reason he did not tell the police this version of the story earlier was because he did not want to get in trouble for driving under a suspended license.
 {¶ 11} At his arraignment on November 27, 2000, Kitts pled "not guilty" to the charges in the indictment. The matter proceeded to a jury trial on January 30, 2001. At the conclusion of the trial, the jury returned a verdict of "not guilty" to the charge of murder. However, the jury returned a verdict of "guilty" to the lesser-included offense of involuntary manslaughter. The jury also returned a "guilty" verdict to the charge of domestic violence.
 {¶ 12} A sentencing hearing was held on March 19, 2001, at which time Kitts was sentenced to five years imprisonment for the involuntary manslaughter conviction and one year for the domestic violence offense, both terms to be served consecutively.
 {¶ 13} Kitts files this appeal, citing two assignments of error.
 {¶ 14} The first assignment of error is:
 {¶ 15} "The trial court erred when it entered a judgment of conviction and sentenced appellant on allied offenses of similar import in violation of R.C. 2941.25."
 {¶ 16} In his first assignment of error, Kitts argues that the offenses of involuntary manslaughter and domestic violence are allied offenses of similar import and that the trial court committed plain error in imposing consecutive sentences on the two counts, rather than merging the two offenses for sentencing.
 {¶ 17} Kitts was charged with domestic violence and murder because it was alleged that he committed two separate, distinct offenses. The domestic violence charge arose from the incident earlier in the day in which Kitts admitted he and his wife were "wrestling" together after an argument over cigarettes. It was during this time that Kitts told police that both he and his wife hit their head several times while in the midst of a physical altercation. This incident resulted in Kitts asking his neighbor to drive him to the Kent Police Station.
 {¶ 18} The murder charge arose from the incident which occurred later that evening when Kitts returned home and discovered the empty pill bottles. It culminated in Lori lying motionless at the end of the drive, partially in the roadway.
 {¶ 19} R.C. 2941.25 governs allied offenses of similar import and reads:
 {¶ 20} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 21} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 22} Kitts did not raise this issue at sentencing but argues that plain error exists, requiring this court to remand the matter for resentencing. A court of appeals will not normally address errors which are not raised in the lower court.[1] However, pursuant to Crim.R. 52(B), plain error may be addressed even if not raised below. The Supreme Court of Ohio has held that "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."[2]
 {¶ 23} "Plain error is an obvious error * * * that affects a substantial right."[3] Moreover, an alleged error is plain error only if the error is "obvious" and "but for the error, the outcome of the trial clearly would have been otherwise."[4]
 {¶ 24} Kitts was convicted of involuntary manslaughter, governed by R.C. 2903.04(B), which reads:
 {¶ 25} "(A) No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony."
 {¶ 26} Kitts was also convicted of domestic violence, in violation of R.C. 2919.25, which states:
 {¶ 27} "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.
 {¶ 28} "(B) No person shall recklessly cause serious physical harm to a family or household member.
 {¶ 29} "* * *
 {¶ 30} "(D) Whoever violates this section is guilty of domestic violence [if the offender has a prior conviction for domestic violence] a violation of division (A) or (B) of this section is a felony of the fifth degree * * *."
 {¶ 31} Thus, the trial court did not commit plain error in sentencing Kitts on both offenses.
 {¶ 32} A close examination of the facts in this case reveal that Kitts committed two separate offenses on the day in question, domestic violence and involuntary manslaughter, respectively. Thus, pursuant to R.C. 2941.25(B), Kitts could be convicted of both offenses. The trial court did not err in sentencing Kitts for both offenses.
 {¶ 33} Kitts' first assignment of error is without merit.
 {¶ 34} The second assignment of error is:
 {¶ 35} "The appellant has been deprived of his liberty without due process of law due to the imposition of the maximum sentence in nonconformance with Ohio's sentencing statutes."
 {¶ 36} In his second assignment of error, Kitts contends that the trial court did not comply with the requirements for R.C. 2929.14(C) for imposing maximum sentences. Specifically, Kitts argues that the trial court never stated on the record that it considered imposing the minimum sentence.
 {¶ 37} This court's review of a felony sentence is de novo.[5]
However, an appeals court may not disturb a sentence unless it finds, by clear and convincing evidence, that the record does not support the sentence or that the sentence is otherwise contrary to law.[6]
 {¶ 38} The Supreme Court of Ohio has addressed the requirements for imposing a maximum sentence.[7] In Edmondson, the court determined that "[i]n order to lawfully impose the maximum term for a single offense, the record must reflect that the trial court imposed the maximum sentence based on the offender satisfying one of the listed criteria in R.C. 2929.14(C)."[8]
 {¶ 39} R.C. 2929.14(C) limits the sentencing court to imposing the maximum authorized sentence only on defendants who fall into one of the following categories: (1) those who commit the worst form of the offense; (2) those who pose the greatest likelihood of committing future crimes; (3) certain major drug offenders; and (4) certain repeat violent offenders.
 {¶ 40} Moreover, the findings of the sentencing court must appear somewhere in the record, either within the written entry of sentence or in the transcript of the sentencing hearing.[9]
 {¶ 41} A review of the record in the instant case reveals that the trial court made the required findings both during the sentencing hearing and in its sentencing entry. At the sentencing hearing, the trial court stated:
 {¶ 42} "The Court heard the trial of this matter. And there is no question about it in this Court's mind as far as this particular charge which he was convicted of, check the background of it and listened to the trial, there was a lot of suffering went on that day, not just a killing, but a lot of suffering, apparently where drugs were involved and alcohol was involved, prescription or other drugs. This was a violence that erupted again and again and apparently erupted in the past and there's a previous conviction for domestic violence.
 {¶ 43} "Also, it's my recollection, there may have even been a child in the house at the time all this was going on.
 {¶ 44} "Because of all of that, the Court can only find that this is the worst form of the offense, and as such, the Court sentences accordingly."
 {¶ 45} The court also went further to say:
 {¶ 46} "The Court also is reminded of the prior conviction for domestic violence, and prior conduct with the parties here, and the Court would feel that unless consecutive sentences are imposed, it wouldn't adequately be protecting the public or punishing this individual for an additional new conviction of domestic violence and his history has shown a need for consecutive sentences in order to adequately protect the public and punish the offender."
 {¶ 47} The trial court reiterated these findings in its written judgment entry of sentence when it found:
 {¶ 48} "The Court finds the Defendant has never served a prison term, however, to impose the minimum sentence would demean the seriousness of the offense and not adequately protect the public nor punish the offender.
 {¶ 49} "The Court further finds this is the worst form of the offense, therefore, the maximum sentences shall be imposed."
 {¶ 50} Therefore, we find that the trial court made the required statutory findings on the record. Once the sentencing court makes the requisite statutory findings for maximum sentencing, the court need not then delve into a lengthy explanation for why it is not imposing the minimum sentence. Adequate findings regarding a maximum sentence obviate the need to discuss minimum sentencing.
 {¶ 51} Kitts' second assignment of error is without merit.
 {¶ 52} The judgment of the trial court is affirmed.
Judgment affirmed.
JUDITH A. CHRISTLEY and DIANE V. GRENDELL, JJ., concur.
[1] State v. Williams (1977), 51 Ohio St.2d 112, paragraph one of the syllabus.
[2] State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
[3] State v. Keith (1997), 79 Ohio St.3d 514, 518.
[4] Long, at paragraph two of the syllabus.
[5] R.C. 2953.08.
[6] State v. Thomas (July 16, 1999), 11th Dist. No. 98-L-074, 1999 Ohio App. LEXIS 3334, at *10.
[7] State v. Edmondson (1999), 86 Ohio St.3d 324, 329.
[8] Id. at 329.
[9] State v. Wilson (June 23, 2000), 11th Dist. No. 99-L-026, 2000 Ohio App. LEXIS 2766, at *6.